Bradley CARTER, Appellant,

v.

STATE of Iowa, Appellee.

No. 94–892.

Supreme Court of Iowa.

Sept. 20, 1995.

Philip B. Mears of Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and Andrew Humphrey, Assistant Attorney General, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, SNELL, and ANDREASEN, JJ.

PER CURIAM.

Bradley Carter (Carter) appeals the district court's denial of his application for postconviction relief. Carter argues: (1) his due process rights were violated when he was punished for verbal abuse under prison disciplinary rule 26, (2) rule 26 is unconstitutionally vague, and (3) his First Amendment rights were violated when he was punished for verbal abuse under the facts of this case. We affirm.

## I. Background Facts and Proceedings.

On December 3, 1992, correctional officer Wessels reported Carter had violated several prison disciplinary rules. Wessels detailed in his report an incident that occurred on December 3, 1992, when Carter received a disciplinary report written by Correctional Supervisor I Lewis (CSI Lewis). Carter began to loudly contest the report and remarked: "He's lying like a motherfucker." Wessels noted Carter repeated the remark five times, and it could be heard by him and several of the inmates.

The prison disciplinary committee found Carter guilty of violating prison rules 26 (verbal abuse) and 27 (disruptive conduct). It further found Carter's claim that he "was making the statement at another inmate was simply not believed" and that Wessels "felt that the statement was directed at him." The committee imposed the sanctions of twenty days disciplinary detention and loss of sixteen days good conduct time.

Carter's appeals to the warden and to the director of corrections were denied. Carter filed an application for postconviction relief in which he argued punishment for his speech violated his rights under the First Amendment and was not proper under rule 26 because CSI Lewis was not present when he made the comment about him.

The district court denied Carter's application. It found Carter's remark did not have to be directed to a correctional officer to be "abusive and disruptive and in derogation of the officer's authority."

On appeal, Carter argues the disciplinary committee violated his due process rights by punishing him for his remark about CSI Lewis even though Lewis was not "subjected" to the comment. Moreover, Carter asserts, if his conduct does fall within the verbal abuse rule, the rule is unconstitutionally vague because it fails to give notice that remarks made about persons not present are punishable. Carter further maintains the committee violated his First Amendment rights by punishing him for his remark because: (1) the verbal abuse rule was not content-neutral as applied to his remark, and (2) inmates have a protected right to articulate and press complaints about a guard's actions.

## II. Scope of Review.

Postconviction proceedings are law actions and ordinarily are reviewed on error. *Kinnersley v. State*, 494 N.W.2d 698, 699 (Iowa 1993). However, when there is an alleged denial of constitutional rights our review is de novo. *Id.*

## III. Due Process Claim.

Carter contends his conduct was not prohibited by prison disciplinary rule 26 because there was no evidence CSI Lewis was subjected to the remark Carter made about him. Therefore, Carter maintains his punishment did not comport with due process requirements. We disagree.

Rule 26 provides:

**Verbal Abuse:** An inmate commits verbal abuse when the inmate subjects another person to abusive or defamatory lan-

guage, remarks, or gestures, in writing or orally, and includes insolence or disrespect to another person.

We have stated rule 26 "is meant to encompass 'insolence or disrespect to another person.'" *Reysack v. State*, 440 N.W.2d 392, 394 (Iowa 1989). The disciplinary committee found Wessels believed that Carter's remark was directed at him. We find Carter subjected another person, Wessels, to insolence and disrespect and therefore violated rule 26.

### IV. *Vagueness Claim.*

■ Carter argues that if rule 26 does encompass his behavior then the rule is unconstitutionally vague because it fails to give notice an inmate can be punished for making remarks about a person who is not present. In *Reysack*, we examined a similar vagueness challenge to rule 26 and noted:

Disciplinary rules of penal institutions do not define crimes, and the full criminal-law strictures on vagueness are inapplicable. Since sanctions are involved, however, disciplinary rules must be intelligible.

*Reysack*, 440 N.W.2d at 393 (quoting *Fichtner v. Iowa State Penitentiary*, 285 N.W.2d 751, 759 (Iowa 1979)). "In determining the sufficiency of the notice a statute must of necessity be examined in light of the conduct with which defendant is charged." *Reysack*, 440 N.W.2d at 393 (quoting *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439, 458 (1974)). Carter was charged with violating rule 26 based on the derogatory remark he made about CSI Lewis loudly enough for Wessels, as well as several inmates, to hear. We have previously determined Carter violated the verbal abuse rule by subjecting Wessels, not CSI Lewis, to insolence and disrespect. Rule 26 clearly prohibits such conduct; therefore, we reject Carter's claim that the rule is unconstitutionally vague.

### V. *First Amendment Claim.*

Carter argues prison officials violated his First Amendment free speech rights when they punished him for his remarks about CSI. Lewis. He emphasizes he is not making a facial challenge to rule 26; he is arguing the rule violates his First Amendment rights as applied to the facts of the case. Carter contends: (1) the verbal abuse rule was not content-neutral as applied to his speech, and (2) his right to press a complaint against a guard is protected speech under the First Amendment.

■ A prison inmate "'retains those First Amendment rights not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Bressman v. Farrier*, 825 F.Supp. 231, 235 (N.D.Iowa 1993) (quoting *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495, 501 (1974)). "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64, 79 (1987). The following considerations are relevant in determining the reasonableness of the regulation at issue: (1) is there a valid rational connection between the regulation and the legitimate governmental interest, (2) do alternative means of exercising the right remain open to inmates, (3) what impact will accommodation of the right have on guards and other inmates and on allocation of prison resources generally, and (4) are there ready alternatives? *Id.* 482 U.S. at 89–92, 107 S.Ct. at 2261–63, 96 L.Ed.2d at 79–80.

■ We find the verbal abuse regulation, as applied in this case, was related to the prison's legitimate interest in maintaining security and discipline. Further, we find alternative means of exercising the right to free speech remain open to inmates, accommodation of the right to free speech that is verbally abusive would have an adverse impact on the prison environment and the prison's legitimate goal of maintaining security and discipline, and there are no ready alternatives to the regulation of verbally abusive speech.

A. *Content of speech.* Carter notes that in *Turner*, the Court stated that in evaluating whether there is a connection between the regulation and the governmental interest it is important to inquire whether the regulation operates in a "neutral fashion, without regard to the content of the expression." *See id.* He maintains rule 26 was not content-neutral as applied to his speech.

■ We disagree. We find that it was not the content of his expression for which Carter was punished but rather the manner in which he expressed himself. Carter was expressing his opinion that CSI Lewis was a liar; however, he expressed this opinion loudly enough for Wessels to hear and in a manner that was insolent and disrespectful to Wessels.

■ **B.** *Protected speech.* Carter next contends his speech should be viewed as grievance-related speech and inmates have a First Amendment right to press complaints about guard's behavior. We find the cases Carter cites in support of his argument are distinguishable from the facts of this case. *See Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.1989) (inmate's action should not have been dismissed on summary judgment when he alleged his First Amendment rights had been violated by prison officials who had deliberately filed false disciplinary charges against him in retaliation for his having filed a grievance pursuant to established procedures); *Wildberger v. Bracknell,* 869 F.2d 1467, 1468 (11th Cir.1989) (inmate's action should not have been dismissed on summary judgment if inmate alleged his First Amendment rights were violated because he had been disciplined for filing several grievances); *Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988) (inmate's allegation that prison officials intentionally filed false disciplinary charges against him in retaliation for his cooperation with a state administrative investigation withstood motion for summary judgment); *Wolfel v. Bates,* 707 F.2d 932 (6th Cir.1983) (inmate's First Amendment rights were violated when he was subjected to discipline merely because he drafted, circulated, and sent a petition to prison superintendent complaining of guard's behavior in which there was no finding the inmate's statements were false or that they were maliciously communicated). Carter was not punished because he complained about CSI Lewis. Carter was punished because he expressed his complaint in a verbally abusive manner to Wessels. Therefore, we reject Carter's contention that his speech was protected by the First Amendment.

## VI. *Conclusion.*

We conclude neither Carter's due process nor his First Amendment rights were violated when he was punished under rule 26. Moreover, we find rule 26 is not unconstitutionally vague. Accordingly, we affirm the district court's order denying Carter's application for postconviction relief.

**AFFIRMED.**