**Kim MARK, Appellant,**

v.

**STATE of Iowa, Appellee.**

**No. 95–356.**

Supreme Court of Iowa.

Nov. 20, 1996.

Philip B. Mears of Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and Layne M. Lindebak, Kristin Ensign and Forrest Guddall, Assistant Attorneys General, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, ANDREASEN, and TERNUS, JJ.

HARRIS, Justice.

Prisoner Kim Mark brought this postconviction proceeding to challenge discipline imposed on him for making false statements and for engaging in sexual misconduct. The matters for which he was disciplined came to light after Mark reported to prison officials that he had been raped by another inmate. Mark correctly claims he has a first amendment right to report a grievance to prison officials. He maintains the imposition of discipline here violated that right, and also challenges the discipline imposed under the circumstances here as contrary to public policy.

We readily agree that a prisoner may not be punished in retaliation for reporting matters of this kind to prison officials—even in cases where there is a failure of proof on the matter reported. But we decline to extend this protection so as to prohibit punishment for all matters which may come to light during investigation of the prisoner's complaint. We think the record here does not support a finding that Mark's punishment was in retaliation for reporting a rape. Hence we affirm a district court judgment dismissing Mark's challenge.

On March 22, 1992, while Kim Mark was an inmate at the Iowa state penitentiary, he reported to a prison counselor that he had been raped by a fellow inmate. An investigation was begun during which Mark was questioned about the incident. Mark told a prison official he had no sexual contact with any inmate during the previous two years. He also said he was "100% sure" his assailant was armed with a razor blade. Mark agreed

to take a polygraph examination to support his report.

During an initial interview with the polygraph examiner, Mark related that he had sexual contact with another inmate on March 13, 1992. He also said he was "not sure" his assailant had a razor blade. The examiner then reported to prison officials that he would not conduct an examination, saying it "would not be productive."

As a result of his admissions and the contradictions, Mark received a disciplinary report alleging he had violated, among other things, prison rules 15 (sexual misconduct) and 35 (false statement). Mark did not offer any defense at the disciplinary hearing [1] and was found to have violated rules 15 and 35. The disciplinary committee imposed harsh punishment: fifteen days of disciplinary detention; loss of 365 days good-time credit; invocation of any suspended disciplinary sanction; and 365 days restriction to maximum security cell.

After exhausting his administrative appeals, Mark brought this postconviction proceeding alleging that being disciplined for statements made when complaining about his conditions of confinement violates his first amendment rights, as well as public policy. The district court rejected these claims and affirmed the discipline imposed. The matter is before us on Mark's appeal.

■ I. Because the case involves a prisoner's claim that he was disciplined in violation of his constitutional rights, we review his claim "in light of the totality of the circumstances upon which the postconviction court's ruling was made." *James v. State*, 541 N.W.2d 864, 869 (Iowa 1995). This is the functional equivalent of de novo review. *Id.* at 869–70.

■ II. Without doubt a prison inmate "'retains those First Amendment rights not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Carter v. State*, 537 N.W.2d 715, 717 (Iowa 1995) (quoting *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct.

---

1. Mark testified he did not offer witnesses or speak at the disciplinary hearing because the Iowa state penitentiary rule book warns an inmate that making false statements to a disciplinary committee may later be used against the inmate in a criminal prosecution.

2800, 2804, 41 L.Ed.2d 495, 501 (1974)). For a prison rule or regulation to be constitutionally valid, the regulation must be "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64, 79 (1987). Relevant considerations for determining the reasonableness of a regulation include

> (1) is there a valid rational connection between the regulation and the legitimate government interest, (2) do alternative means of exercising the right remain open to inmates, (3) what impact will accommodation of the right have on guards and other inmates and on allocation of prison resources generally, and (4) are there ready alternatives?

*Carter,* 537 N.W.2d at 717 (citing *Turner,* 482 U.S. at 89–92, 107 S.Ct. at 2261–63, 96 L.Ed.2d at 79–80).

▉ Inmates have a constitutional right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72, 78 (1977). This right of access to the courts also extends to established prison grievance procedures. *Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir.1995); *Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.1989). The reason for this is that "[t]he reality and substance of any of a prisoner's protected rights are only as strong as his ability to seek relief from the courts or otherwise petition the government for redress of the deprivation of his rights." *Bradley,* 64 F.3d at 1280. Inmates have a first amendment right to articulate and press complaints about the behavior of prison staff and the conditions and incidents of their confinement. *See Sprouse,* 870 F.2d at 452.

▉ The filing of disciplinary charges against an inmate in retaliation for an inmate's exercise of this right to file a grievance, even if the grievance is determined to be without merit, is also a violation of the inmate's constitutional rights. *Id.; see also Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996) (stating that it is "clearly established" in the fifth circuit that officials may not file disciplinary charges against an inmate in retaliation "for complaining to a supervisor about a guard's

misconduct"); *Black v. Lane,* 22 F.3d 1395, 1398–99 (7th Cir.1994) (officials may not retaliate against inmate for making complaints about race-based treatment in prisons); *Wildberger v. Bracknell,* 869 F.2d 1467, 1468 (11th Cir.1989) (inmate states a constitutional claim when alleging being disciplined for filing a grievance about conditions of confinement); *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988) (inmate may not be disciplined in retaliation for cooperation with state investigation of prison conditions).

It seems clear that it should be the prisoner's burden to establish that the challenged discipline was retaliatory, but there is not agreement about the elements required to prove the point. *Compare Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995) (holding that if the inmate actually violated the prison rule for which he was disciplined, he had no retaliatory-discipline claim) *with Woods,* 60 F.3d at 1166 (prisoner violating rule might have a claim but "to state a retaliatory discipline claim inmate must allege and be prepared to establish but for the retaliatory motive the complained of incident ... would not have occurred"). Although the *Woods* holding might seem to be in closer compliance with the *Turner v. Safley* mandate, it is unnecessary for us to so hold. As will appear, Mark fails under either the *Henderson* or *Woods* holding.

Mark bolsters his contention by an alternative public policy argument. He cites changing social attitudes when rape charges are brought: whereas courts formerly viewed charges of rape with untoward skepticism, this is no longer true. In former times juries were routinely instructed, in accordance with what was called the Lord Hale instruction, to act in accordance with this skepticism, being informed that a charge of rape is easily made but hard to disprove, and therefore to be viewed with caution. *See State v. Brooks,* 181 Iowa 874, 890, 165 N.W. 194, 199 (1917). Mark correctly points out that this approach and the Lord Hale instruction derived from it are discredited now. We disapproved the Lord Hale instruction in *State v. Feddersen,* 230 N.W.2d 510, 514–15 (Iowa 1975). *See* A.

Thomas Morris, *The Empirical, Historical and Legal Case Against the Cautionary Instruction,* 1988 Duke Law J. 154 (1988). Mark contends the change in social views demands that prisoners should be encouraged to file complaints such as the one he lodged.

Mark is right on the law but wrong on the facts because he failed to prove a retaliatory motive for the discipline imposed. The discipline was not imposed because he asserted and failed to prove a rape. The false statements for which he was disciplined were not statements he made in reporting the rape. Rather they were: (1) statements, later contradicted by him, that he had had no sexual contact for two years previously; and (2) his statement, also later contradicted by him, that his assailant possessed a razor. The sexual misconduct for which he was disciplined was likewise unrelated to the rape he alleged; it was an earlier one he admitted to (after first denying any such sexual experiences).

Because Mark's discipline was not shown to be retaliatory, the district court was correct in dismissing Mark's postconviction petition.

**AFFIRMED.**