# IN THE COURT OF APPEALS OF IOWA

No. 16-0291
Filed May 2, 2018

**SHAWN P. SHELTON,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____

     Appeal from the Iowa District Court for Lucas County, Gary G. Kimes, Judge.


     Shawn Shelton appeals the district court's dismissal of his contempt action and his underlying motion for injunctive relief.  **AFFIRMED.**


     Shawn P. Shelton, Ft. Madison, self-represented litigant, appellant.

     Thomas J. Miller, Attorney General, and William A. Hill, Assistant Attorney General, for appellee State.


     Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**DOYLE, Presiding Judge**

Shawn Shelton appeals the district court's dismissal of his contempt action and his underlying motion for injunctive relief. Upon our review, we affirm.

### I. Background Facts and Proceedings.

In 1991, Shawn Shelton was convicted of first-degree murder and attempted murder.[1] *See Shelton v. State*, No. 08-1962, 2011 WL 441932, at *2 (Iowa Ct. App. Feb. 9, 2011). His subsequent postconviction-relief action was denied and dismissed after a trial, and this court affirmed the dismissal in 2011.[2] *See id.* at *2-3. Further review was denied by the Iowa Supreme Court. *See Shelton v. Mapes*, 821 F.3d 941, 946 (8th Cir. 2016).

Thereafter, Shelton filed a federal petition for writ of habeas corpus arguing "he received constitutionally ineffective assistance of counsel or that the state appellate court decision was unreasonable." *Id*. The federal district court denied his petition, but granted a certificate of appealability on issues raised by Shelton. *See id*.; *see also* 28 U.S.C. § 2253(c)(1) (requiring issuance of "a certificate of appealability" to appeal to the federal court of appeals). Shelton appealed, and the Eighth Circuit affirmed the denial of his petition. *See Mapes*, 821 F.3d at 951. Shelton sought review by the Supreme Court, but his petition for writ of certiorari was denied. *See Shelton v. Mapes*, 137 S. Ct. 196 (Oct. 2016).

On June 9, 2015, prior to the Eighth Circuit's ruling, Shelton received a notice from the Iowa Department of Corrections (IDOC) concerning property he had stored in remote legal storage. The notice explained that on May 1, 2015, an

---

[1] The criminal case number was FECR001872.
[2] The postconviction case number is PCCV022133.

earlier notice was posted informing inmates that "IDOC Policy was revised to exclude the provision for remote legal storage." The May notice had stated inmates had sixty days from the date of the memo "to send your excess legal material out at your expense, give it to an authorized visitor, or have it destroyed." The May notice went on to say:

> Each offender identified with legal materials in storage will be allowed to review what is in storage. You will be given an opportunity to identify which items you would like destroyed, given to an authorized visitor, sent out, and what you will like to have in your legal property within your cell. Reminder, policy dictates that each offender is allowed 3 boxes of personal property, and legal work is counted in that limit.

The June notice advised Shelton he had yet to comply with the IDOC directive to deal with his property, and it gave Shelton until July 7, 2015, "to come into compliance with the directive" or his property would be destroyed.[3]

---

[3] Materials designated by Shelton and included in the appendix prepared by Shelton show that on May 22, 2015, he petitioned the IDOC for a waiver or variance from the new rule "because [he] was actively involved in litigation and have been wrongfully convicted." On June 22, general counsel for the IDOC informed Shelton his petition did not comply with applicable regulations and therefore his waiver/variance request was denied. Shelton then filed a grievance with the IDOC on July 15, 2015. On August 13, the IDOC provided Shelton with a grievance response. Shelton's grievance was sustained. He was informed:

> I [a representative of the Anamosa State Penitentiary] have been informed that the DOC is reviewing their earlier directive to discontinue remote legal storage areas.
> Based upon information you have provided as well as information contained above, your grievance complaint is sustained. Until a final decision is made by the DOC, you will be allowed to keep your excess legal material in remote legal storage.

In a Warden Appeal Response dated September 10, the deputy warden of the penitentiary responded, "I fail to see what you are appealing as your remedy is already in place; your legal material is currently stored, just as it was previously." Inexplicably, these documents were never furnished to the district court during the course of this litigation. The materials are not a part of the record on appeal, *see* Iowa R. App. P. 6.801, and we therefore do not consider them in deciding this appeal. *Rasmussen v. Yentes*, 522 N.W.2d 844, 846 (Iowa Ct. App. 1994).

On July 9, 2015, Shelton filed a "Motion to Preserve Criminal Court Records," dated June 25, 2015, in state district court concerning the IDOC's revised policy. Shelton's motion caption cited his criminal case number, FECR001872, as well as his original postconviction-relief case number PCCV022133.[4] Shelton asserted he had "attempted to resolve this problem administratively," but the IDOC had "declined to accommodate [his] procedural, statutory and constitutional rights to access the court and to have criminal records. . . ." Shelton noted his appeal to the Eighth Circuit was still pending at that time, and he asserted it was "more likely than not" that "a minimum limited remand will be ordered back to the Federal District Court due to the State of Iowa's misconduct." Shelton requested an order be entered to protect the record for present and future court proceedings. Shelton filed his own memorandum to support his motion for the protection of his property, and later, a supplement to the motion.

On July 13, 2015, the district court construed Shelton's filings in the district court as "seeking an order restraining the [IDOC] from destroying records in his possession in prison." The court noted it could not "tell whether or not the State ha[d] been given notice of [Shelton's] request," so the court granted Shelton's motion "temporarily," enjoining the IDOC "from destroying [Shelton's] records wherever situated, pending hearing." On August 24, 2015, the court entered an order finding Shelton had not exhausted his administrative remedies but the

---

[4] Iowa Courts Online shows that when Shelton filed this motion, he had two other postconviction-relief actions pending in Jones county, one filed in 2013, *see* Iowa Courts Online, *Shelton v. State*, No. 06531 PCCV005602, and one filed in 2014, *see* Iowa Courts Online, *Shelton v. State*, No. 06531 PCCV005843.

temporary order "shall remain in full force and effect," pending hearing, to "be scheduled upon request of either party after administrative proceedings are completed."

A few months later, Shelton filed an application for an order to show cause why the IDOC should not be held in contempt. Shelton stated he had received a CD from the Clerk of the Eighth Circuit Court of Appeals containing an audio recording of the oral arguments heard in his appeal. Shelton asserted the IDOC was ordering that he "send out or destroy" the recording, in violation of the IDOC's policy classifying the CD as "legal materials" and in violation of the temporary injunction. Shelton insisted he would "suffer irrefutable harm if an order [was] not issued immediately." The matter was set for hearing.

On January 21, 2016, the district court entered an order denying Shelton's contempt action. The court stated:

> The first consideration is that the litigation underlying the present case has been completed and is now closed. The action was dismissed in 2009 and the appeal from that action was eventually dismissed by Shelton. For reasons unknown, Shelton has attempted to revive the present action in 2015 "in an attempt to preserve the records in another ongoing case before the Eighth Circuit Court of Appeals." There is no jurisdictional basis to revive this action and no reason why this action should be used to enforce issues related to another pending action. Therefore, on this basis alone, the action is denied.
> As well, the claim that Shelton is attempting to argue that he wants to preserve the audio file of the oral arguments, *Shelton v. Mapes*, 8th Cir. No. 15-1015, is still pending. Shelton has counsel in that appeal and any question with regard to the events that transpired in the proceeding should be discussed with counsel. If Shelton has a claim with regard to access to the courts in that case, that is a claim which should be bought by his counsel.
> Finally, the ultimate test is whether Shelton has access to the courts. *See Walters v. Kautzky*, 680 N.W.2d 1 (Iowa 2004). In this action [there] is no indication that Shelton has been denied counsel

6

or that his ability to litigate claims has been impeded.  Therefore, any request for contempt or otherwise is denied.
The contempt action is denied and this action is closed.

Thereafter, Shelton filed a plethora of motions, including for a new trial and for sanctions.  The district court subsequently denied Shelton's motions.  Shelton now appeals.

## II.  Discussion.

On appeal, Shelton asserts two claims.  First, he argues, "The district court had jurisdiction to treat a motion to preserve criminal court records as a petition for injunctive relief prior to the filing of a civil complaint," citing Iowa Code chapter 664 (2015) and Iowa Rule of Civil Procedure 1.1501.  Second, Shelton asserts, "The district court violated principles of equity when it dismissed a consent decree i.e. temporary injunction, for lack of jurisdiction."

## A.  Jurisdiction.

Though Shelton's June 2015 "Motion to Preserve Criminal Court Records" was captioned with the original criminal and postconviction-relief case numbers, the substance of the motion challenged the constitutionality of the IDOC policy— destruction of his stored legal materials if he did not move them to another permitted location.  Shelton mentioned the postconviction-relief chapter of the Iowa Code—chapter 822—a few times in his motion and in his memorandum in support thereof, but he did not cite section 822.2, which sets out who can seek postconviction relief under that chapter and claims upon which relief may be granted.  *See* Iowa Code § 822.2(1)(a)-(g); *see also Belk v. State*, 905 N.W.2d 185, 188 (Iowa 2017) (discussing section 822.2(1)).  As relief, Shelton prayed in his memorandum that the court "preserve his criminal case records by granting the

motion to preserve his various other criminal case documents in the interest of justice . . . [until] such time that [his] court avenues and legal remedies [were] exhausted or until such time" as the IDOC provided him a "meaningful opportunity and reasonable time to convert his physical . . . records into electronic [files] . . . ." The court clearly took this to mean Shelton sought a temporary injunction while he was exhausting his administrative remedies—not a request for postconviction relief. Our rules generally require that we look at a motion's substance to determine its nature, not its label. *See Iowa Elec. Light & Power Co. v. Lagle*, 430 N.W.2d 393, 395 (Iowa 1988).

"A temporary injunction is a preventive remedy to maintain the status quo of the parties *prior to final judgment and to protect the subject of the litigation*." *State v. Krogmann*, 804 N.W.2d 518, 523 (Iowa 2011) (emphasis added); *see also* Iowa R Civ. P. 1.1501-.1502. "One requirement for the issuance of a temporary injunction is a showing of the likelihood or probability of success on the merits of the underlying claim." *Lewis Invs., Inc. v. City of Iowa City*, 703 N.W.2d 180, 184 (Iowa 2005). Where the litigant's underlying claim is an equitable action seeking permanent injunctive relief, the district court must "assess the likelihood that the [party] would be successful in showing entitlement to a permanent injunction" in determining whether a request for a temporary injunction should be granted. *Id*. Pursuant to rule 1.1506(1), a "temporary injunction may be granted by . . . [a] judge of the district in which the action is or will be pending." Because the question of whether a temporary injunction should be issued or rejected depends upon the unique facts of each case and "rests largely in the sound discretion of the trial

court," our review is for an abuse of discretion. *Id.* However, to the extent Shelton claims a violation of his constitutional rights, our review is de novo. *See id.*

Here, the district court initially granted Shelton a temporary injunction so that matters could be sorted out before any action was taken by the IDOC. Then, the court extended the temporary injunction so that Shelton had the opportunity to pursue and exhaust his administrative remedies concerning the IDOC's policy. The court was empowered to grant Shelton injunctive relief. *See* Iowa R. Civ. P. 1.1501-.1502; *see also Schrier v. State*, 573 N.W.2d 242, 244 (Iowa 1997) (noting Iowa district courts are courts of general jurisdiction, "empowered by the Iowa Constitution to hear all cases in law, equity, or special proceedings"). The injunction was only temporary; its issuance was essentially conditioned upon Shelton seeking administrative review of the policy. When Shelton requested the State be held in contempt for violating the temporary injunction, there was no evidence in the record before the district court that Shelton had exhausted or even had begun pursuing his administrative remedies. *See* Iowa Admin. Code r. 201-50.21 (2018) (discussing prisoner's discipline and grievance procedures); IDOC Policy No. IO-OR-06 (2018) (setting forth offender grievance procedures) *available at* https://doc.iowa.gov/sites/default/files/io-or-06_offender_grievances_procedures.pdf (last visited April 15, 2018). Thus, there was no likelihood or probability of success on the merits of his underlying claim—the constitutionality of the IDOC's policy.

In denying Shelton's motion, the district court stated:

> The first consideration is that the litigation underlying the present case has been completed and is now closed. The action was dismissed in 2009 and the appeal from that action was eventually dismissed by Shelton. For reasons unknown, Shelton has attempted to revive the present action in 2015 in an attempt to

preserve the records in another ongoing case before the Eighth Circuit Court of Appeals. There is no jurisdictional basis to revive this action and no reason why this action should be used to enforce issues related to another pending action. Therefore, on this basis alone, the action is denied.

Given that Shelton's original motion was not brought pursuant to section 822.2(1), we agree the postconviction-relief statutes offered him no relief. *See Fassett v. State*, No. 15-0816, 2016 WL 3554954, at *4-7 (Iowa Ct. App. June 29, 2016) (discussing district court's jurisdiction versus its authority over certain matters and finding district court correctly concluded the inmate "could not proceed under chapter 822 and should instead seek relief under chapter 17A," which provides for pursing administrative remedies); *see also Belk*, 905 N.W.2d at 193 (Waterman, J., dissenting) (discussing *Fassett* and inmates' challenges to IDOC policies). Moreover, there is no evidence in this case that Shelton exhausted his administrative remedies concerning the IDOC policy, and we have no administrative process to review. *See id.* Ultimately, while the district court had the power to enter a temporary or permanent injunction, its decision not to continue the temporary injunction was not an abuse of discretion under the facts of the case.

### B. Equity.

Shelton next contends, "The district court violated principles of equity when it dismissed a consent decree i.e. temporary injunction, for lack of jurisdiction." His argument is essentially the same as above—the court had jurisdiction to enter an injunction; therefore, its dismissal of the injunction was inequitable. Shelton claims "the parties agreed a temporary injunction should issue as an independent remedy prior to the filing of a civil complaint." Upon our review of the record, we disagree.

To be sure, inmates are not stripped of all constitutional rights by imprisonment, including the right to have meaningful access to the courts. *See Risdal v. State*, 573 N.W.2d 261, 263 (Iowa 1998); *Mark v. State*, 556 N.W.2d 152, 154 (Iowa 1996); *see also Walters*, 680 N.W.2d at 5. But there is no denial of access to the courts where there is no actual injury to the offender. *See Walters*, 680 N.W.2d at 5. Here, there is no evidence Shelton suffered any injury. *See Lewis v. Casey*, 518 U.S. 343, 362 (1996) (noting the necessity of exhausting administrative remedies before claiming a denial of access to the courts); *see also Risdal*, 573 N.W.2d at 263 (noting offender exhausted his administrative remedies before filing an application for postconviction relief); *In re City of Ames*, 219 N.W.2d 718, 719 (Iowa 1974) ("The rule requires that, prior to calling upon the courts to act, a party must exhaust any remedy available before an administrative agency."). Shelton had a means to challenge the constitutionality of the IDOC's policy, and the court even entered a temporary injunction to allow Shelton time to do so. Equity does not require reversal under the facts of this case.

### *III. Conclusion.*

For the foregoing reasons, we find no abuse of discretion by the district court in dismissing Shelton's contempt action and the underlying motion for injunctive relief. Accordingly, we affirm the court's dismissal of Shelton's motions.

**AFFIRMED.**

Tabor, J., concurs; McDonald, J., concurs specially.

**MCDONALD, Judge** (concurring specially)**.**

I would dismiss this appeal for want of jurisdiction. Final judgment in this postconviction-relief action was entered in December 2008. *See Shelton v. State*, No. 08-1962, 2011 WL 441932, at *3 (Iowa Ct. App. Feb. 9, 2011). The motion and contempt application at issue in this appeal were wholly unrelated to the underlying case and filed in 2015. The district court lacked jurisdiction over the motion and subsequent contempt application. *See State v. Olsen*, 794 N.W.2d 285, 289 (Iowa 2011) ("Although Olsen filed a post-judgment motion, the motion was untimely and therefore did not resurrect the district court's jurisdiction in the matter. Thus, the district court had no jurisdiction to enter its . . . ruling."); *State v. Braun*, 460 N.W.2d 454, 455 (Iowa 1990) (explaining the district court was without jurisdiction over application filed in a closed criminal case and stating "[a] defendant cannot jump-start an expired case by simply filing an application for collateral relief"). We thus lack jurisdiction over this appeal. Shelton's filing of a motion wholly unrelated to the underlying case seven years after final judgment was entered does not revive the case, create jurisdiction in the district court, revive the time to appeal from the final judgment, or create appellate jurisdiction where it does not exist. *See Olsen*, 794 N.W.2d at 289 ("A timely appeal is jurisdictional, and the time limit for appeal cannot be extended by filing an improper posttrial motion. An untimely posttrial motion is defective and does not toll the running of the thirty-day period within which an appeal must be taken."); *State v. Fidler*, No. 15-1648, 2016 WL 2747825, at *1 (Iowa Ct. App. May 11, 2016) (dismissing appeal where motion at issue was filed ten years after entry of final judgment).