# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-3182

_____

Nicholas Leon Hanegan,                   *

                         *

          Appellant,            *

                         *   Appeal from the United States

   v.                      *   District Court for the

                         *   Southern District of Iowa.

Thomas J. Miller,                 *

                         *

          Appellee.            *

_____

Submitted:  September 20, 2011
Filed:    December 7, 2011

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Nicholas Hanegan was convicted of kidnapping in the first degree, attempted murder, and willful injury, in violation of Iowa law. Following the denial of his direct appeal and the exhaustion of his state postconviction remedies, Hanegan petitioned for a writ of habeas corpus, arguing that the Iowa Court of Appeals unreasonably applied federal law and made an unreasonable determination of the facts in concluding that his trial attorney was not ineffective. See 28 U.S.C. § 2254(d). The district court[1] denied Hanegan's petition. We affirm.

_____

[1] The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

# I.

After Hanegan and Carrie Fleenor had been in a sexual relationship for about two weeks, Hanegan became suspicious of Fleenor. Both used methamphetamine, smoking the drug and ingesting it intravenously. Hanegan had told acquaintances that he believed that Fleenor had reported him to the police as a drug user and dealer and that he wanted to kill her.

On May 5, 2000, Hanegan spent the day injecting and smoking methamphetamine. According to Fleenor, who also used methamphetamine that day, Hanegan called her and asked for a ride to his mother's apartment. Fleenor reluctantly agreed. At some point in the evening, Hanegan and James Rainer met Fleenor in the parking lot of her apartment complex. They went to Fleenor's car, where Hanegan entered the driver's seat, Rainer took the passenger's seat, and Fleenor sat in the back seat. Fleenor testified that she did not remember how she entered the car. Hanegan testified that she did so voluntarily.

Hanegan exited the parking lot and later drove the car past the street that would have taken them to his mother's apartment. Fleenor asked why they were not going to his mother's apartment, to which Hanegan responded that Fleenor was going to die. Thereafter, Hanegan stopped at a friend's house. Fleenor testified that Hanegan told Rainer to keep her in the car while he went into the house. Fleenor testified that she was held captive in the car, yelled for help, and tried to kick out one of the car windows. She further testified that when Hanegan returned and learned what she had done, he slapped her for attempting to escape. Hanegan disputed Fleenor's recollection, testifying that Fleenor was free to leave and that he did not threaten her. According to Hanegan, he had stopped at the friend's house to buy methamphetamine and that Fleenor had given him money to do so.

Hanegan drove to a pet cemetery and parked the car. Fleenor testified that Hanegan pulled her out of the car and beat her head with a liquor bottle before shoving her into the car and attempting to light it on fire. Fleenor testified that she lost consciousness at that point, due to the effects of the trauma and drugs.

The cemetery's caretaker noticed a car in the field adjacent to the cemetery the morning of May 6, 2000. He approached the car, but did not see anyone inside. As he was returning to his duties, he heard a faint voice say, "Help me." App. 92. He then found Fleenor lying directly in front of the left rear wheel, with only her head and shoulders exposed and the rest of her body pinned beneath the car. The caretaker described Fleenor's face as "[v]irtually every shade of purple and red and black and blue, and eyes were swollen." App. 94.

Rescue personnel lifted the car off Fleenor's body by means of large air bags. Fleenor was then transported to the hospital, where Dr. Guy Stines, a trauma surgeon, treated her. She was released from the hospital six or seven days later.

Hanegan was charged with kidnapping in the first degree, attempted murder, and willful injury. See Iowa Code §§ 710.1(3) and (4) and 710.2 (kidnapping); § 707.11 (attempted murder); § 708.4 (willful injury). On the kidnapping charge, which carried a mandatory life sentence, the jury was instructed that the state had to prove the following elements: (1) Hanegan removed Fleenor from a place, (2) with the specific intent to inflict serious injury upon her, (3) that he did not have Fleenor's consent or authority to do so, and (4) as a result she was intentionally subjected to torture or sustained a serious injury. App. 394. The state was required to prove that Fleenor suffered serious injury for both the kidnapping and willful injury counts. Serious injury was defined as "a disabling mental illness or bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." App. 395 (jury instruction); see Iowa Code § 702.18(1).

-3-

In addition to the testimony recounted above, Fleenor, Hanegan, and several other witnesses testified at trial regarding the events of May 5 and 6, 2000. Hanegan testified that he and Fleenor argued at the pet cemetery and that he hit her head with a whiskey bottle. According to Hanegan, the bottle broke when he hit Fleenor a second time, whereupon he fled the scene. He denied running Fleenor over with the car. After leaving the pet cemetery, Hanegan called friends and asked them for a ride. A friend retrieved Hanegan and Rainer from a road near the pet cemetery. One witness testified that Hanegan told him that "he decapitated [Fleenor] and he had beaten her," that he "drove over her a couple times . . . left her for dead." App. 104. Another testified that Hanegan said that "he thinks he killed her and ran the car over her, and she screamed and screamed." App. 232.

Fleenor testified that she suffered several injuries, including a lacerated eyelid, several burns, six fractured ribs, an injury to her spine, and a cut on the top of her head. She explained that the injuries caused permanent or ongoing problems: her arm was scarred from the burn, the spinal injury caused mild scoliosis, and no hair would grow on the one-inch scar on her head. Dr. Stines testified that Fleenor "had sustained multiple injuries: mostly facial bruising and lacerations, a burn of the left upper arm, and bruising and cuts of the knees and left thigh." App. 150-51. A CAT scan revealed that several of Fleenor's ribs were fractured. After the prosecutor showed him a recent photograph of the burn mark on Fleenor's arm, Dr. Stines testified that Fleenor's scar was one that was typically left by a burn and that it was permanent. Fleenor also testified that she used methamphetamine for eight years and that in May 2000, she was injecting methamphetamine on a daily basis. She admitted that methamphetamine affected her thinking ability and made her aggressive. Despite this testimony, defense counsel did not introduce evidence that Fleenor might be suffering from methamphetamine-induced psychosis.

With respect to the kidnapping charge, Hanegan's trial attorney focused the defense on the first and third elements: whether Hanegan removed Fleenor from a

place without her consent. The defense's theory of the case was that Fleenor went willingly to the pet cemetery, where she, Hanegan, and Rainer planned to drink alcohol and inject methamphetamine, and that the evidence was insufficient to prove kidnapping. Defense counsel later explained that he decided to forego challenging the serious injury element because he believed that Fleenor's injuries—including her broken ribs—met the statute's definition and because he sought to limit the jury's exposure to the photographs of her injuries.

The jury convicted Hanegan on all counts, and he was sentenced to life imprisonment on the kidnapping conviction. He received concurrent, lesser terms of imprisonment on the remaining charges. He appealed his kidnapping conviction, arguing, among other things, that the evidence was insufficient to allow a jury to find that he removed Fleenor without her consent. The Iowa Court of Appeals affirmed.

During the postconviction proceedings, Hanegan sought to establish that his trial counsel was ineffective for failing to challenge the serious injury element of the kidnapping charge. Fleenor's trial testimony regarding her injuries was somewhat inconsistent with her medical records. In a postconviction deposition, Dr. Stines testified that the wound to Fleenor's arm was likely an abrasion—not a burn—but regardless the treatment would have been the same and the injury would leave a permanent scar. He also testified that the chest X-ray revealed that she had fractured three ribs—not six—and that those fractures "are consistent with being run over by a car." App. 451. Fleenor's medical records did not reveal an injury to the spine, and Dr. Stines testified that he "ha[d] not seen instances of scolioisis resulting from this type of trauma." App. 440. Hanegan also argued that the injury to Fleenor's scalp did not occur on May 5 or 6, 2000, because it was not listed on her medical records and stitches were not required.

The trial court denied Hanegan's application for postconviction relief. The Iowa Court of Appeals affirmed, concluding that even if "questionable evidence" was

-5-

introduced at trial, Hanegan suffered no prejudice from it. <u>Hanegan v. State</u>, No. 05-1756, 2007 WL 1484476, at \*5 (Iowa Ct. App. May 23, 2007) (unpublished), <u>see</u> 735 N.W.2d 204 (table disposition).

> Upon our de novo review we find overwhelming evidence that Fleenor suffered a "serious injury." The victim was run over by a car. Even Hanegan does not contest the existence of at least three rib fractures, some sort of deep wound to Fleenor's arm, and a possible puncture to the lungs. A jury could have found any of these injuries to have constituted "serious injury" under both the willful injury and kidnapping charges.

<u>Id.</u> Accordingly, the court of appeals held that Hanegan could not have suffered prejudice from the introduction of the contested evidence.

After further review was denied by the state supreme court, Hanegan filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, claiming that the Iowa Court of Appeals unreasonably applied federal law and made an unreasonable determination of the facts in concluding that his trial attorney was not ineffective. The district court denied Hanegan's petition and granted his motion for a certificate of appealability. On appeal, Hanegan argues that his counsel's failure to understand the extent of Fleenor's injuries, as well as the effects of long-term, intravenous methamphetamine use, led to counsel's failure to object to or impeach the false testimony and counsel's failure to introduce evidence that Fleenor suffered from methamphetamine-induced psychosis. Hanegan contends that trial counsel's failure to challenge the serious injury element was not a strategic decision, but rather was based on counsel's erroneous belief that broken ribs satisfied the element of serious injury. Finally, he argues that counsel was deficient in failing to challenge whether Hanegan drove the car over Fleenor's body.

II.

In reviewing a district court's denial of habeas relief, we review its findings of fact for clear error and its conclusions of law de novo. Flowers v. Norris, 585 F.3d 413, 416 (8th Cir. 2009). Like the district court, we review the underlying decision of the Iowa Court of Appeals under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Flowers, 585 F.3d at 416.

AEDPA limits the scope of our review in a habeas proceeding. If the issues raised in the petition were adjudicated on the merits in the state court proceeding, the petition must be denied, unless the state court disposition "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). A state court's findings are entitled to a presumption of correctness, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. § 2254(e)(1).

The Iowa Court of Appeals rejected Hanegan's ineffective assistance of counsel claim on the merits. The state appellate court held that his trial counsel was not ineffective under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on his ineffective assistance of counsel claim, Hanegan was required to show that counsel's performance was deficient and that prejudice resulted. Id. at 687.

On habeas review, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable." Harrington v. Richter, 131 S. Ct. 770, 785 (2011); see § 2254(d)(1). Under AEDPA, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law."

Richter, 131 S. Ct. at 785 (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.'" Id. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. at 788.

The Iowa Court of Appeals did not address whether counsel's performance was deficient under Strickland, but rather found that Hanegan had suffered no prejudice from his counsel's failure to correct Fleenor's and Dr. Stines's incorrect testimony.[2] "In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." Richter, 131 S. Ct. at 791-92 (citing Wong v. Belmontes, 130 S. Ct. 383, 390 (2009) (per curiam); Strickland, 466 U.S. at 693). Instead, we must determine whether it is "reasonably likely" the result would have been different. Strickland, 466 U.S. at 696. "The likelihood of a different result must be substantial, not just conceivable." Richter, 131 S. Ct. at 792 (citing Strickland, 466 U.S. at 693).

It was not unreasonable for the Iowa Court of Appeals to conclude that Hanegan's evidence of prejudice fell short of meeting this standard. The evidence presented in the state postconviction proceedings established only a possibility that Fleenor suffered from a psychosis or that she might have suffered injuries in events not related to the night of May 5, 2000. Although Hanegan established that Fleenor exaggerated some injuries—the number of broken ribs, the spinal injury, and the

---

[2]At trial, Dr. Stines testified that Fleenor's wound was a burn. In Fleenor's medical records, he noted that it was a contusion. During the postconviction proceedings, he testified that it was likely an abrasion.

scoliosis—the state court of appeals found that the undisputed injuries constituted serious injury and that Hanegan thus could not have suffered any prejudice from the introduction of the disputed evidence.[3]  The court listed the following injuries as examples of serious injury: Fleenor fractured three ribs, she suffered "some sort of deep wound to [her] arm, and a possible puncture to the lung." Hanegan, 2007 WL 1484476, at *5.  Fleenor's medical records and Dr. Stines's testimony support the fact that Fleenor suffered those injuries, and Hanegan has failed to set forth clear and convincing evidence that she did not.  See § 2254(e)(1) (standard for rebutting presumption of correctness).

Whether those injuries constituted serious injury for purposes of Hanegan's kidnapping and willful injury convictions is a question of Iowa law, not federal law. We note that under Iowa law that "[s]carring may in some circumstances rise to the level of serious permanent disfigurement." State v. Hanes, 790 N.W.2d 545, 554 (Iowa 2010); see State v. Phams, 342 N.W.2d 792, 796 (Iowa 1983) ("We have recognized that the statutory definition of serious injury includes those injuries which leave the victim 'permanently scarred or twisted . . . , [in contrast to] a black eye, a bloody nose, and even a simple broken arm or leg.'") (quoting 4 J. Yeager & R. Carlson, Iowa Practice and Procedure § 45 (1979)).  Accordingly, the evidence that Fleenor suffered a contusion, burn, or abrasion to her arm that left a permanent scar supports the Iowa Court of Appeals's determination that Fleenor suffered a serious injury.

---

[3]Iowa Code section 702.18(1) defines serious injury as a disabling mental illness, or a bodily injury that creates a substantial risk of death, causes serious permanent disfigurement, or causes protracted loss or impairment of the function of any bodily member or organ.  For children under the age of four, the statute defines serious injury to include "rib fractures." Iowa Code § 702.18(2).  At oral argument, the state conceded that fractured ribs in adults are not serious injury per se.  To the extent that Hanegan's trial attorney believed that they were, he apparently misunderstood the law.

Finally, Hanegan's contention that the court of appeals erred in finding that Fleenor had been run over by a car is meritless in light of Hanegan's admission to his acquaintances that he had run over Fleenor with the car and the fact that Fleenor's body was found pinned beneath the vehicle.

Conclusion

Even assuming that Hanegan's counsel's performance was deficient for failing to challenge the evidence of Fleenor's injury and for failing to introduce evidence that she might have been psychotic, the district court correctly denied Hanegan's petition for a writ of habeas corpus. Hanegan failed to establish (1) that the Iowa Court of Appeals unreasonably applied Strickland when it rejected his claim that he suffered prejudice from his trial counsel's ineffective assistance or (2) that the Iowa Court of Appeals unreasonably found that there was sufficient evidence to prove serious injury. The order dismissing the petition is affirmed.

_____