# United States Court of Appeals

### For the Eighth Circuit

_____

## No. 15-1015

_____

Shawn P. Shelton

*Petitioner - Appellant*

v.

Terry Mapes

*Respondent - Appellee*

_____

## No. 15-2540

_____

Shawn P. Shelton

*Petitioner - Appellant*

v.

Terry Mapes

*Respondent - Appellee*

_____

## No. 15-2733

_____

Shawn P. Shelton

*Petitioner - Appellant*

v.

Terry Mapes

*Respondent - Appellee*

_____

Appeals from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: October 19, 2015
Filed: April 8, 2016

_____

Before RILEY, Chief Judge, SMITH and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

A jury convicted Shawn Shelton of first-degree murder and attempted murder in Iowa state court in 1990. Shelton appealed his conviction and the Iowa Supreme Court reversed and remanded the case for a new trial on grounds that are not relevant to this appeal. In his second trial, the jury again found Shelton guilty of both counts. Shelton was sentenced to life in prison for the first-degree murder conviction and twenty-five years for the attempted murder conviction. The present appeal arises from the district court's[1] denial of Shelton's federal petition for writ of habeas corpus under 28 U.S.C. § 2254. On appeal, Shelton presents two ineffective-assistance-of-counsel claims regarding jury instructions. We affirm.

_____

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

## I.

Shawn Shelton and Ivan Eugene Swigart left a party in Chariton, Iowa in the early morning hours of July 3, 1989. Shelton drove his vehicle and Swigart rode with him as a passenger. While driving out of the town, Shelton and Swigart observed a pickup truck behind them and believed it was following them. Shelton pulled his vehicle to the side of the road with the intent of allowing the pickup truck to pass by. Instead, the pickup truck stopped alongside Shelton's vehicle. Terry Allen Masters, the driver of the pickup truck, and Dwight Kennedy, the passenger, asked Shelton whether he needed assistance. Shelton asked Masters and Kennedy "what the fuck is your problem" and told them to stop following his vehicle. Shelton sped away and continued to drive down the highway until he reached a gravel road. Shelton turned down the gravel road, hoping Masters and Kennedy would not see him turn and the incident would end. He observed Masters and Kennedy continue down the highway past the gravel road turn off, so he turned his vehicle around and began to drive back toward the highway. On his way back to the highway, however, Shelton discovered Masters and Kennedy driving on the gravel road toward his vehicle. The vehicles engaged in a game of "chicken," driving toward each other until Shelton swerved toward the ditch at the last minute, before the vehicles could collide. Masters and Kennedy continued driving down the gravel road away from the highway. Shelton backed his vehicle out of the ditch onto the gravel road.

While his vehicle was stopped on the gravel road and positioned between Masters' vehicle and the highway, Shelton removed a dissassembled shotgun from behind his seat in the vehicle. He assembled and loaded the shotgun, then told Swigart "we have to kill them before they kill us." Swigart exited the vehicle with the shotgun. Masters and Kennedy had turned their pickup truck around on the gravel road and were driving back in the direction of Shelton's vehicle and the highway. As Masters and Kennedy approached Shelton's vehicle, they observed Swigart standing near the rear of the vehicle with the gun. Masters slowed his pickup truck, then began

to slowly reverse the truck. Masters and Kennedy both ducked below the dash board of the truck. Masters raised his head slightly above the dash board to guide the truck backwards. Swigart fired the gun at Masters' truck, hitting the windshield just above the dash board. The shot struck Masters' face and killed him instantly.

Swigart then reentered Shelton's vehicle and said "let's get the hell out of here." Shelton initially drove back toward the highway, but turned around to go back to Masters' truck after telling Swigart that they should retrieve the shotgun shell that contained their fingerprints. Upon reaching Masters' truck, Shelton fired three additional shots at the pickup truck. Swigart reached inside Masters' truck to turn off the headlights. Shelton and Swigart retrieved some of the shotgun shells and left the scene. After seeing another vehicle driving down the gravel road toward them, Shelton turned off his headlights and drove in the opposite direction of the highway.

Shelton was charged in Iowa state court with murder in the first degree for the death of Masters and attempted murder of Kennedy. A jury convicted Shelton of both charges. Shelton appealed his conviction and the Iowa Supreme Court reversed and remanded for a new trial on grounds that are not relevant to this appeal. At the second trial, Shelton's sole defense was that he acted in self-defense. The jury again convicted Shelton on both counts. The trial court sentenced Shelton to life in prison for the first-degree murder conviction and twenty-five years on the attempted murder conviction. Shelton again appealed his conviction. The Iowa Supreme Court dismissed the appeal without prejudice to any claim for ineffective assistance of counsel in a postconviction relief action.

An application for postconviction relief alleging ineffective assistance of trial and appellate counsel was subsequently filed in Iowa state court and a hearing was held, after which the court dismissed Shelton's application, finding no evidence existed that trial or appellate counsel were ineffective. The court also held that the evidence against Shelton that he aided and abetted Swigart in the murder of Masters

and the attempted murder of Kennedy was overwhelming. On appeal, the Iowa Court of Appeals found that "while the justification jury instruction was an incorrect statement of the law, the great weight of the evidence admitted at trial demonstrates no prejudice to Shelton" and affirmed the denial of Shelton's postconviction relief. Shelton v. State, 2011 WL 441932, at *10 (Iowa Ct. App. 2011). The Iowa Supreme Court denied further review.

Shelton then petitioned for federal habeas relief, asserting several claims, all of which concern his justification defense and the corresponding jury instructions. The district court denied Shelton's petition for habeas relief, concluding that Shelton failed to show he received constitutionally ineffective assistance of counsel or that the state appellate court decision was unreasonable. However, the district court granted a certificate of appealability on the issues of whether the Iowa Court of Appeals rendered a decision contrary to federal law and whether Shelton received ineffective assistance of counsel. Shelton appealed the district court's denial of habeas relief through counsel and submitted an additional pro se appellate brief in this case. We previously granted leave to Shelton to proceed pro se in a separate appeal, which has been consolidated with this case.

II.

On appeal, Shelton argues that the district court erred in finding that he received effective assistance of counsel at his state trial. Because this appeal is from a denial of habeas relief, 28 U.S.C. § 2254(d) applies. Section 2254(d) provides that a writ of habeas corpus shall not be granted on any claim adjudicated on the merits in state court unless such adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 18 U.S.C. § 2254(d). The United States Supreme Court has made clear that "an *unreasonable* application of federal law is different from an *incorrect*

-5-

application of federal law." Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)). Further, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. (quoting Williams, 529 U.S. at 411). The federal habeas court must conclude the state court's application of federal law was "objectively unreasonable," which "creates 'a substantially higher threshold' for obtaining relief than de novo review." Id. (quoting Williams, 529 U.S. at 409 and Schriro v. Landrigan, 550 U.S. 465, 473, 478 (2007)). "[I]n a habeas case alleging ineffective assistance of counsel, we are bound to view what happened at trial through two filters." Marcrum v. Luebbers, 509 F.3d 489, 501 (8th Cir. 2007). First, we must defer to judgments of trial counsel. Id. (citing Strickland v. Washington, 466 U.S. 668, 689 (1984)). Second, we must defer to the state courts' application of federal law to the facts of the case. Id. (citing Bell v. Cone, 535 U.S. 685, 698-99 (2002)). "In habeas corpus proceedings, we review the district court's findings of fact for clear error and its conclusions of law de novo." Id. (citing Garcia v. Bertsch, 470 F.3d 748, 752 (8th Cir. 2006), cert. denied, 551 U.S. 1116 (2007)).

A. Jury Instruction No. 32

The first claim raised by Shelton is that he received ineffective assistance of trial counsel by virtue of counsel's failure to object to Jury Instruction No. 32, pertaining to his justification defense. Shelton contends that Jury Instruction No. 32 was an incorrect statement of law and that the error was one of constitutional magnitude, infecting his entire trial. Jury Instruction No. 32 states:

A person may use reasonable force to prevent injury to a person, including the defendant. The use of this force is known as justification. The State must prove the defendant was not acting with justification. *In this case, if the State has proved Ivan Eugene Swigart was not acting*

-6-

*with justification, then it has established the defendant was not acting with justification.* If the State has failed to prove Ivan Eugene Swigart acted without justification, the defendant is not guilty. Justification does not apply in this case to any shots you find were fired by the defendant, and the State does not have the burden of proving no justification in such circumstances.

(emphasis added). Shelton argues the emphasized portion of the instruction is an incorrect statement of law and that his counsel's failure to object to the instruction constituted deficient performance, which was prejudicial under Strickland. The Iowa Court of Appeals agreed that Jury Instruction No. 32 was "improper because it did not permit the jury to consider Shelton's state of mind at the time he aided and abetted Swigart. It simply declared that if Swigart was not justified, neither was Shelton." Shelton, 2011 WL 441932, at *5. Justification is considered individually under Iowa law. See Iowa Code §§ 704.1, 704.3; State v. Johnson, 274 N.W. 41, 44 (Iowa 1937) ("The acts which accused may do and justify under a plea of self-defense depend primarily upon his own conduct and secondarily upon the conduct of the deceased."). We defer to the Iowa Court of Appeal's conclusion that the instruction was an improper statement of Iowa law and move to an analysis of whether the error rose to the level of prejudice under Strickland. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) (emphasizing that "federal habeas corpus relief does not lie for errors of state law"); Middleton v. Roper, 455 F.3d 838, 852 (8th Cir. 2006) (agreeing that federal courts conducting habeas review lack authority to review the state court's interpretation and application of state law).

Strickland requires the defendant to show: (1) counsel's performance was deficient, such that counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment; and (2) the deficient performance prejudiced the defense, which requires a showing that "counsel's errors were so serious as to deprive the defendant of a fair trial." 466 U.S.

at 687. The district court decided Shelton's case based on the prejudice prong, so we address the prejudice analysis first. See Strickland, 466 U.S. at 697 (allowing courts to address either prong of the inquiry first and noting it will often be easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice).

To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. We must determine whether the likelihood of a different result is "substantial" rather than merely "conceivable." Hanegan v. Miller, 663 F.3d 349, 355 (8th Cir. 2011) (quoting Harrington v. Richter, 562 U.S. 86, 112 (2011)).

The State had the burden to prove Shelton acted without justification under Iowa law. State v. Shanahan, 712 N.W.2d 121, 134 (Iowa 2006). Iowa requires the State to prove any one of the following elements to meet that burden:

1. The defendant started or continued the incident which resulted in injury.
2. An alternative course of action was available to the defendant.
3. The defendant did not believe he was in imminent danger of death or injury and the use of force was not necessary to save him.
4. The defendant did not have reasonable grounds for the belief.
5. The force used by the defendant was unreasonable.

Id. (citing State v. Thornton, 498 N.W.2d 670, 673 (Iowa 1993)). On appeal to the Iowa Court of Appeals, the State asserted it met its burden on a number of those elements. Shelton, 2011 WL 441932, at *6. The Iowa Court of Appeals agreed that Shelton had an alternative course of action available to him because he could have

driven away from Masters and Kennedy.  Id.  Further, the Court concluded that Shelton was not in imminent danger when he assembled the shotgun because Masters was driving away from Shelton and Swigart at that moment, making his use of force unnecessary and unreasonable.  Id.

Shelton's trial counsel's failure to object to Jury Instruction No. 32 was not prejudicial under Strickland in light of the overwhelming evidence against Shelton. The evidence presented in state court showed that at the point that Masters passed Shelton's vehicle on the gravel road, Shelton had an alternative course of action immediately available to him.  He could have driven toward the highway and continued to drive toward the next town to seek assistance.  Instead, Shelton assembled a shotgun and told Swigart "we have to kill them before they kill us." Even after Swigart shot Masters, Shelton made the decision to drive to Masters' truck and fire three additional shots at the truck.  Shelton's extreme conduct assuredly allowed the State to meet its burden of proof regarding Shelton's lack of justification.  The Iowa Court of Appeals concluded that there is no substantial likelihood that the jury would have reached a different result absent trial counsel's error in failing to object to Jury Instruction No. 32.  Given this overwhelming evidence, we conclude the adjudication of Shelton's claim by the Iowa Court of Appeals was not based on an unreasonable determination of facts.

Shelton next argues that the Iowa Court of Appeals' discussion of United States v. Frady, 456 U.S. 152 (1982) is contrary to the Strickland prejudice standard. Shelton asserts that the Iowa Court of Appeals applied the "actual and substantial disadvantage" test from Frady, a test more stringent than the two-prong prejudice test set forth in Strickland.  While the Iowa Court of Appeals cited State v. Hill, 449 N.W.2d 626 (Iowa 1989), which relies upon Frady, the court did not base its holding or primary reasoning on the standard set forth in Frady.  The Court also stated that "there is no prejudice in an erroneous jury instruction if there is so much evidence of guilt that no reasonable probability exists that the result would have been different if

the correct instruction was given" and cited State v. Hopkins, 576 N.W.2d 374 (Iowa 1998). Shelton, 2011 WL 441932, at *5. Hopkins directly cites the Strickland ineffective-assistance-of-counsel standard. 576 N.W.2d at 378. The Iowa Court of Appeals then concluded "the great weight of the evidence admitted at trial demonstrates that no reasonable probability exists that the result would have been different if the correct instruction was given" and again cited Hopkins. Shelton, 2011 WL 441932, at *6. We conclude that, to the extent the Iowa Court of Appeals cited Frady, the decision was not "contrary to" clearly established law because the final conclusion rested upon the "reasonable probability" Strickland standard rather than the "actual and substantial disadvantage" test from Frady.

Because the state court's decision was not "contrary to" clearly established law, "the remaining question under the 'unreasonable application' clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Harrington, 562 U.S. at 101). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Harrington, 562 U.S. at 101. The § 2254(d) standard, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), was intended to be difficult to meet and only authorizes a federal habeas court to issue the writ in cases where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Id. at 102. Here, the possibility for fairminded jurists to disagree on the Iowa Court of Appeals' application of Frady and Strickland exists. Having found the state court appropriately evaluated Shelton's case in light of Strickland, we conclude the state court's determination under Strickland was not unreasonable regarding counsel's failure to object to Jury Instruction No. 32.

Shelton also contends that the error was a structural error that deprived him of a key component of his defense, entitling him to automatic reversal. A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Johnson v. United States, 520 U.S. 461, 468 (1997) (quoting Arizona v. Fulminante, 499 U.S. 279, 310 (1991)). Examples of structural error include errors of such a magnitude as a total deprivation of the right to counsel, lack of an impartial trial judge, unlawful exclusion of grand jurors of defendant's race, refusal of the right to self-representation at trial, denial of the right to a public trial, or an erroneous reasonable-doubt instruction to jury. Id. at 469 (internal citations omitted). Trial counsel's failure to object to the incorrect statement of justification law in Jury Instruction No. 32, while an error, is not so serious that it can be considered a structural error affecting Shelton's substantial rights. See Becht v. United States, 403 F.3d 541, 547 (8th Cir. 2005) (holding instructional errors on the elements of a crime do not rise to the level of structural error).

## B. Jury Instruction No. 27

Shelton also contends the Iowa Court of Appeals again unreasonably applied Strickland when it found that trial counsel's failure to object to Jury Instruction No. 27 was also harmless error. The Iowa Court of Appeals again cited Hill and Frady in its discussion of Jury Instruction No. 27, Shelton, 2011 WL 441932, at *7, which Shelton contends was unreasonable and "contrary to" the Strickland standard for the same reasons identified in his argument regarding Jury Instruction No. 32.

Jury Instruction No. 27 stated: "concerning element no. 2 of instructions no. 13, 20, 21, and 24 the wound inflicted *by the defendant* resulted in the death of Terry Allen Masters, if it caused or directly contributed to Terry Allen Masters' death." (emphasis added). Shelton, 2011 WL 441932, at *6. The instruction thus incorrectly stated that it was defendant Shelton, not Swigart, who fired the shot that caused Masters' death. Shelton's trial counsel failed to object to Jury Instruction No. 27. The

government concedes that the only evidence presented at trial showed that Swigart, not Shelton, inflicted the wound that killed Masters. No other jury instruction indicated that Shelton fired the fatal shot; rather, the other jury instructions correctly provided that Shelton aided or abetted Swigart in the shooting of Masters.

The district court reasoned that, "[g]iven the evidence and other instructions, there is not a reasonable probability that the error in Instruction 27 had any effect on the outcome of the case or undermined confidence in the outcome." Citing Strickland and applying the deference to the state appellate court required by AEDPA, the district court held that the "jury's decision would not 'reasonably likely have been different absent the errors.'" Indeed, the Iowa Court of Appeals concluded its examination of trial counsel's failure to object to Jury Instruction No. 27 by holding "there is no indication that the result would have been different if the correct instruction was given" and cited Hopkins, the Iowa case predicated upon Strickland analysis. Shelton, 2011 WL 441932, at *7.

"Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial." Strickland, 466 U.S. at 693. While we recognize that trial counsel failed to object to an incorrect fact contained in Jury Instruction No. 27, we also note that causation was not a material issue in the case. As discussed above, the evidence against Shelton was overwhelming, and no evidence indicated that Shelton fired the fatal shot at Masters. If Jury Instruction No. 27 had been correctly worded to say "the wound inflicted by Swigart," there is no substantial likelihood of a different result. The Iowa Court of Appeals concluded that any error made by trial counsel in failing to object to this instruction is not prejudicial under Strickland and does not rise to such a magnitude that it can be considered constitutionally ineffective assistance of counsel. Applying the same rules and standards under § 2254(d) and AEDPA to this claim as the claim regarding Jury Instruction No. 32, we hold the Iowa Court of Appeals' decision regarding Jury Instruction No. 27 was not unreasonable.

Finally, Shelton argues the combination of errors evidenced by counsel's failure to object to Jury Instructions Nos. 27 and 32 amounts to a separate constitutional violation. As the Iowa Court of Appeals noted, Strickland does not authorize a cumulative inquiry of counsel's performance. Forrest v. Steele, 764 F.3d 848, 860 (8th Cir. 2014) (citing Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996). "Errors that are not unconstitutional individually cannot be added together to create a constitutional violation." Wainwright, 80 F.3d at 1233 (internal citations omitted). Neither trial counsel's failure to object to Jury Instruction No. 32 nor Jury Instruction No. 27 were unconstitutional errors standing alone and they cannot be combined to equal an error of constitutional magnitude. Habeas relief will not be granted based on the cumulative effect of attorney errors.

## III.

In addition to the ineffective-assistance-of-counsel claims raised by Shelton through counsel, Shelton raised other challenges through pro se filings. "[A]lthough generally we do not consider pro se briefs when a party is represented by counsel," Wayne v. Benson, 89 F.3d 530, 535 (8th Cir. 1996), we granted Shelton leave to proceed pro se in a consolidated case. We have considered Shelton's additional pro se arguments and have determined that they are either waived, moot, or without merit.

## IV.

Accordingly, we affirm the district court's denial of Shelton's petition for a writ of habeas corpus.

_____