# IN THE COURT OF APPEALS OF IOWA

No. 19-0555
Filed July 21, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**SHAWN PATRICK SHELTON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Lucas County, Terry Rickers, Judge.

A defendant challenges the denial of his motion for new trial.  **WRIT SUSTAINED IN PART; ANNULLED IN PART; AND REMANDED.**

Peter Stiefel (until withdrawal) and Fred Stiefel, Victor, for appellant.

Thomas J. Miller, Attorney General, and Benjamin Parrott, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., May, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**BLANE, Senior Judge.**

Shawn Shelton was convicted of first-degree murder and attempt to commit murder in 1990. Twenty-six years later, he filed a motion for new trial based on newly discovered evidence that a witness, the co-defendant, recanted his trial testimony. After the district court ruled on Shelton's motion for new trial, he appeals, raising numerous issues, including that the court failed to give him notice of the hearing on his motion for new trial and prevented him from presenting evidence from additional witnesses. We treat Shelton's challenge as a petition for writ of certiorari. We find the court failed to give adequate notice of the hearing as required by Iowa Rule of Criminal Procedure 2.24(2)(a) and then ruled on the motion, so we sustain the writ. We will also address other issues presented to us that are appropriate under certiorari.

## I. FACTS AND PRIOR PROCEEDINGS

In 1990, a jury convicted Shelton of first-degree murder and attempt to commit murder. *See Shelton v. State*, No. 08-1962, 2011 WL 441932, at *2 (Iowa Ct. App. Feb. 9, 2011). Ivan Swigart testified for the State at Shelton's trial. On direct appeal, the supreme court reversed for trial error, and Shelton was retried and convicted.[1] *Id.* Shelton was sentenced to life in prison. *Id.* His second direct appeal was dismissed as frivolous. *Id.*

---

[1] Swigart testified at Shelton's first trial. After the remand, Swigart refused to testify at Shelton's second trial. The State was permitted to offer the transcript of Swigart's testimony from the first trial, so Swigart was not subject to additional cross-examination.

In 1992, Shelton filed an application for postconviction relief (PCR). *Id.* The PCR court denied the first application. *Id.* On appeal, we set out the underlying facts of the case:

> In the early morning hours of July 3, 1989, applicant, Shawn Shelton, and Ivan Eugene Swigart were leaving a party in Chariton, Iowa. Upon exiting town they observed a pickup truck behind them that they believed was following them. Shelton pulled his vehicle over to the side of the road hoping the pickup would drive by. Instead the pickup stopped along side of him and the occupants, Terry Allen Masters and Dwight Kennedy, inquired whether Shelton needed assistance. Shelton asked Masters and Kennedy "what the f*** is your problem" and told them to stop following him. Shelton then sped off throwing gravel at Masters'[s] truck. Shelton proceeded down the highway until he reached a gravel road. He turned onto the gravel road in an attempt to lose Masters and Kennedy. When Masters and Kennedy proceeded past the gravel road turn off, Shelton turned his vehicle around and proceeded back to the main highway. On his way back to the highway, Shelton again encountered Masters and Kennedy driving in the opposite direction down the gravel road. The vehicles seemed to engage in a game of "chicken" with Shelton swerving at the last minute toward the ditch. Masters and Kennedy proceeded down the gravel road as Shelton backed his vehicle out of the ditch and brought it to a stop in the roadway.
>
> Shelton then removed a disassembled shotgun from behind his seat, put it together and loaded it. Shelton told his passenger, Swigart, "we have to kill them before they kill us." Swigart took the shotgun and exited the vehicle taking position in the rear. Masters and Kennedy by this time had turned around on the gravel road to head back toward Shelton. As they approached the Shelton vehicle, Masters and Kennedy observed Swigart with the gun. Masters slowed his vehicle and began to back up slowly. Masters and Kennedy both ducked below the dash board with Masters peaking above the dash to guide the vehicle backwards. Swigart fired the gun hitting Masters'[s] windshield just above the dash board. The bullet struck Masters on the left side of the face, killing him instantly.
>
> Swigart returned to the cab of Shelton's pickup truck stating "let's get the hell out of here" and Shelton proceeded to drive back toward the highway. On the way back, Shelton informed Swigart that they had to return to the scene in order to retrieve the shotgun shells because they had their fingerprints on them and they needed to make sure that both occupants were dead. When they reached Masters'[s] pickup truck, Shelton took the gun from Swigart and fired three more times at the pickup truck. Swigart reached inside the Masters vehicle to turn off the headlights. They picked up some of

the shells and then left the scene. They turned off their headlights and headed in the opposite direction of the highway because they had seen another vehicle traveling down the gravel road toward them.

*Id.* at *1–2. We affirmed denial of postconviction relief on appeal. *Id.* at *10–11.

Shelton then filed a federal petition for writ of habeas corpus that was ultimately unsuccessful. *See Shelton v. Mapes*, 821 F.3d 941, 948 (8th Cir. 2016).

In 2016, Shelton filed a motion for a new trial in the original criminal case based on newly discovered evidence. He alleged that while talking with Swigart in prison in 2015, Swigart confessed the State gave him favorable treatment in exchange for testifying against Shelton, even though he denied this being the case when he testified at Shelton's first trial. And Shelton further asserts he found a record that Swigart told a psychiatrist that he put together the shotgun, not Shelton, evidence Shelton claims proves he did not intend to kill Masters and Kennedy.

Shelton's motion was followed by several years of pre-hearing litigation, including Shelton's waiver of counsel, appointment of standby counsel, appointment of a special master, motion to amend his motion for new trial,[2] and other proceedings. On May 3, 2018, the court entered the following order:

> The court determines that an evidentiary hearing should be set wherein the court hears testimony from co-defendant Ivan Eugene Swigart wherein he verifies the details of the allegations contained in his affidavit dated June 16, 2015. At the same hearing, the court will inquire of Mr. Swigart as to whether or not he waives any attorney-client privilege insofar as to defendant Shawn Shelton's previous attempts to depose attorney Elwood Johnson and insofar as defendant Shelton seeks access to any other privileged information contained in co-defendant Swigart's files or records.

---

[2] The motion to amend was based upon an investigation report by Lucas County Deputy Herbert Muir (the Muir report) of certain wet spots on the road at the crime scene that Shelton asserts is exculpatory.

The defendant, through his standby counsel, and counsel for the State shall contact the rural case coordinator within 14 days and obtain a one-day hearing date that will allow the defendant and his co-defendant to be transported to the Lucas County Courthouse for the evidentiary hearing. The court will allow defendant Shelton to examine co-defendant Swigart regarding the allegations contained in Swigart's affidavit. The State will then be allowed to cross-examine Swigart.

For security purposes, Shelton and Swigart shall NOT be allowed any in-person communication with each other while they are in Lucas County or while they are being transported to and from Lucas County.

The hearing should be scheduled to commence within 60 days of the date of this order.

On May 9, the court then entered the following order:

After conferring with the parties and counsel, the court sets an evidentiary hearing on July 6, 2018 at 9:30 a.m. The court shall hear testimony from Ivan Eugene Swigart at that time. After hearing Mr. Swigart's testimony, the court will hear arguments on the defendant's motion to amend his motion for new trial. Following those arguments the court will consider any other pending unresolved motions.

The court held the hearing on July 6. At the start of the hearing, before Swigart's testimony, Shelton discussed with the court whether Shelton was going to ask Swigart questions. Shelton then made the following statement: "I do have questions for Mr. Swigart. However, those questions for Mr. Swigart will come at the motion for new trial with other evidence that I have." A short time later, Shelton stated: "I've already put on the record my objections to this evidentiary hearing because this is not my evidentiary hearing. I didn't want this hearing." During the examination of a witness, the county attorney objected, stating "[w]e're not here today to try the motion for new trial." After Shelton had concluded, the court asked the county attorney whether he had any witnesses to present. He replied: "No, Your Honor. It did not appear to be at this time that there was, other than Mr. Swigart's testimony, that we were going to present evidence."

During the hearing, the court also stated that it "wasn't intending that we were going to have a full-fledged trial on the motion to amend." The court proceeded to address pending motions and concluded by stating:

> But I'm going to provide both sides an opportunity to further brief the issue of whether or not, based on the timing of this evidence whether or not, it's permissible for the court to consider it at this stage twenty plus years after the original trial and whether or not the new evidence, other than Mr. Swigart's testimony—I'm going to set that as a separate issue—assuming that the other allegations in the amendment for new trial are true, would they rise to the level justifying a new trial or not? And also because of the timing of Mr. Swigart's affidavit and testimony today, I want some detailed briefing and case authority as to whether or not the timing of these recantations and disclosures should affect the weight of Mr. Swigart's testimony and, again, whether or not it would rise to the level of justifying a new trial. I'm going to give the parties thirty days from today, which would be August 6, to file these briefs. Is there anything else for the record before we adjourn for today?
> [COUNTY ATTORNEY]: No, your Honor.
> THE DEFENDANT: I maintain my objection with regards to this hearing today. Other than that, no.

On February 4, 2019, the district court filed its ruling and order denying Shelton's motion for new trial.[3] Shelton moved to amend and enlarge, and the court denied the motion. Shelton filed two post-hearing motions for appointment

---

[3] On February 4, the court also filed an order denying the following motions filed by Shelton: (1) motion to reschedule hearing filed on July 12, 2018; (2) motion to amend court order filed on July 23, 2018; (3) motion to stay briefing schedule filed on July 23, 2018; (4) request for order filed on July 23, 2018; (5) motion to strike plaintiff's brief filed on August 15, 2018; (6) request for orders filed on August 15, 2018; (7) motion for partial judgment and application for new trial filed on September 17, 2018; (8) motion to amend order and motion to stay filed on September 19, 2018; (9) motion or appointment of standby counsel filed on October 11 and 25, 2018; and (10) motion for change of venue filed on November 9, 2018. These rulings were filed seven months after the deadline for briefs following the hearing.

of counsel, which the court denied.  Shelton then filed a notice of appeal.  We treat

Shelton's notice of appeal as a petition for writ of certiorari.[4]

## II.  SCOPE OF REVIEW

"A writ of certiorari is limited to triggering review of the acts of an inferior

tribunal on the basis the inferior tribunal exceeded its jurisdiction or otherwise

acted illegally."  *Crowell v. State Pub. Def.*, 845 N.W.2d 676, 682 (Iowa 2014).

---

[4] There is a preliminary question of this court's jurisdiction to hear the case.

First, the State argues the motion was only available to Shelton more than two years after final judgment if he could show good cause for the delay.  *See* Iowa R. Crim. P. 2.24(2) (providing a motion for new trial based on "important and material evidence in the defendant's favor since the verdict, which the defendant could not with reasonable diligence have discovered and produced at trial," must be made "within two years after final judgment, but . . . may be considered thereafter upon a showing of good cause").  The court did not make a good-cause finding.  Nonetheless, it ruled on the motion, so its finding that good cause justified the delay may be implied in doing so.  In any case, the State failed to challenge this ground below.

Next, both parties agree Shelton has no statutory right to appeal from denial of a motion for new trial made after the final decision in the criminal case.  *See* Iowa Code § 814.6(1)(a) (2019) (providing a right of appeal exists from "[a] final judgment of sentence" except in limited circumstances); *James v. State*, 479 N.W.2d 287, 290 (Iowa 1991) (holding appeal is not an "inherent or constitutional right" (citing *Boomhower v. Cerro Gordo Cnty. Bd. of Adjustment*, 163 N.W.2d 75, 76 (Iowa 1969))).  Shelton's paths to appellate review are through writ of certiorari or discretionary review.  *See* Iowa R. App. P. 6.107; Iowa Code § 814.6(2).  In an unpublished disposition of our court, *State v. Anderson*, No. 14-1767, 2016 WL 3272143, at *3 (Iowa Ct. App. June 15, 2016), we considered whether a similar matter was appealable and concluded a petition for writ of certiorari was the proper form of review.

Now, to obtain discretionary review, Shelton has to show the district court order raises "a question of law important to the judiciary and the profession."  Iowa Code § 814.6(2)(e).  We do not believe Shelton's case reaches that standard.  *See State v. LePon*, No. 18-0777, 2019 WL 2369887, at *6 (Iowa Ct. App. June 5, 2019.)

To obtain a writ of certiorari, the party must claim the judge "exceeded the judge's jurisdiction or otherwise acted illegally."  Iowa R. App. P. 6.107(1)(a).  Shelton asserts various legal errors of the district court, so we exercise jurisdiction over this matter as if the notice of appeal were a petition for writ of certiorari.  We thus consider the arguments as presented.  *See Anderson*, 2016 WL 3272143, at *3.

Once the appellate court "exercises its discretionary power to grant certiorari, we engage in review of the action of the inferior tribunal and either sustain or annul it." *Id.* Thus, our review is for error at law.

## III. ANALYSIS

### A. Notice and Hearing on Motion for New Trial

Shelton contends he was denied notice and a hearing on his motion for new trial. As one of the procedural steps in seeking a new trial, the court must "giv[e] the parties notice and an opportunity to be heard." Iowa R. Crim. P. 2.24(2)(a). Shelton does not raise this as a constitutional claim, so our review is for errors at law. *Crowell*, 845 N.W.2d at 682.

Notice means "[l]egal notification required by law or agreement, or imparted by operation of law as a result of some fact" or "[t]he condition of being so notified, whether or not actual awareness exists." *Notice*, *Black's Law Dictionary* (11th ed. 2019). In an analogous situation where notice and hearing is statutorily required, our court found that when the notice did not identify a specific issue to be considered at the hearing, the notice was deficient. *Silva v. Emp. Appeal Bd.*, 547 N.W.2d 232, 235 (Iowa Ct. App. 1996) (finding notice was plainly deficient in its failure to reference issue addressed at hearing). Shelton does not argue he was not provided notice of a hearing. Rather, he argues the notice did not advise the parties that the court would address his substantive motion—his motion for new trial. The order indicated the court would hold a hearing. But based upon this record, we must agree that the notice was deficient as to the subject of the hearing.

Reading the May 3 and May 9 orders together, it is evident that the district court was not scheduling a hearing on Shelton's motion for new trial. Both Shelton

and the county attorney expressed their understanding at the hearing that it was not the hearing on Shelton's new trial motion. The May 3 order also indicated that the court would inquire into matters that concerned additional discovery Shelton was seeking—whether Swigart would waive the attorney-client privilege so that Shelton could depose Swigart's criminal defense attorney, as well as review privileged records and files presumably within the attorney-client privilege.[5] Since one of the purposes of the July 6 hearing was in regard to further discovery being sought by Shelton, it is illogical that that hearing being scheduled was to be the final hearing on the motion for new trial.

As for an opportunity to be heard, Shelton contends the court failed to hold a hearing on his motion. He insists the July 2018 hearing was not on the merits of his motion but held for the purpose of allowing Swigart to testify on the allegations in his affidavit and for the court to rule on the motion to amend. This is borne out by the May 3 and May 9 orders that set out the reason the court wanted to schedule the hearing and the order then setting that hearing. The court held the hearing, but neither Shelton nor the county attorney understood or accept it to be the merits hearing on the motion for new trial. About a week afterward, Shelton filed a "request to schedule hearing" on his new trial motion. On July 13, Shelton's standby counsel filed a "report" with the court asserting Shelton had not presented evidence at the July 6 hearing as "it was not the hearing upon the motion for new trial." Numerous other filings by both Shelton and the county attorney following the

---

[5] Upon review of the record of the July 6 hearing, we find neither of these discovery matters were addressed.

July 6 hearing indicate they did not consider that hearing to be the full hearing on the motion for new trial. On February 4, 2019, the court denied the motion for new trial and also all pending motions filed since the hearing—a total of eleven post-hearing motions—including the request to schedule hearing on the motion for new trial.

The court's May 9 order said "[f]ollowing those arguments the court will consider any other pending unresolved motions." As the record shows, Shelton was prolific in filing motions that required the court's attention. To say that this comment in the order included the motion for new trial would be a stretch. Comments by the prosecutor as well as the court's own comments at the conclusion of the hearing indicate that the motion for new trial was not within the scope of the July 6 hearing. Shelton identifies in his brief six additional witnesses and evidence he would have presented for the hearing on his motion for new trial.[6]

The State argues that Shelton could have subpoenaed the additional witnesses, taken the stand himself, and offered additional documents but did not. But this argument presupposes that the order setting the hearing put Shelton on notice that his motion for new trial was to be addressed at that hearing. As we concluded above, those orders did not do so. Neither Shelton nor the county attorney believed the hearing on July 6 was on the motion for new trial. Shelton's failure to present all of his witnesses and evidence in support of his motion for new

---

[6] In addition to Swigart, Shelton called two witnesses at the July 6 hearing. One was former Lucas County Deputy Herbert Muir and the other was his former standby counsel, Michael Adams. Their testimony dealt with a discovery issue and the motion for leave to amend and not the motion for new trial.

trial at the July 6 hearing cannot be faulted when the orders did not provide adequate notice.

We conclude that the hearing on July 6 was not the hearing on Shelton's motion for new trial required by the rule and that the district court prematurely issued a final ruling.[7]  We must sustain the writ and remand for the final Rule 2.24(2)(a) hearing on the motion for new trial.  We also set aside the court's February 4, 2019 Ruling and Order on Shelton's motion for new trial.  We make no determination of Shelton's motion for new trial on the merits.  Since the judge who has been handling this case has already issued a ruling, although this does not trigger disqualification under Iowa Court Rule 51:2.11, upon remand the judge may consider recusal in order to avoid any appearance of impropriety under Rule 51:1.2.  *See Taylor v. State*, 632 N.W.2d 891, 895-96 (Iowa 2001).

### B.  Motion to Amend Motion for New Trial

On December 11, 2017, Shelton filed a motion to amend his motion for new trial.[8]  On May 3, 2018, the court ordered: "The defendant's motion to amend his motion for new trial will be considered on the same date of the evidentiary hearing wherein the court will hear testimony from Ivan Eugene Swigart."  In its May 9 order, the court set the motion to amend for hearing on July 6.  Following the July 6 hearing, that same date the court filed an order: "The court also directs the parties

---

[7] Iowa Court Rule 51:2.6(A):  "A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law."

[8] This motion is identified in the docket as "1st Amendment to Application for New Trial."  Attached to the document were Appendix 1, 2 and 3.  The State resisted the amendment as well as Appendix 3 and filed an additional objection on July 5, 2018.

to address whether or not the defendant's motion to amend his motion for new trial should be granted." The briefs were to be filed by August 6 and both Shelton and the county attorney complied.

On February 4, the court filed two separate orders. One was the ruling and order denying the motion for new trial. That ruling does not mention the motion to amend the motion for new trial and does not contain any analysis of the issues raised in Shelton's motion to amend. The second order listed various motions that the court was denying, including the specific dates those motions were filed.[9] This order does not identify the motion to amend and particularly any motion filed on December 11, 2017, the EDMS filing date of the motion. From our thorough review of the trial court docket, it appears to us that the court never granted or denied Shelton's application to amend the motion for new trial, and did not rule on the issues raised in the proposed amendment.

In this appeal, Shelton asserts the district court abused its discretion by denying his motion to amend his motion for new trial to add claims related to the Muir report. We agree, if the court ruled, our review of such ruling would be for an abuse of discretion. *See Struve v. Struve*, 930 N.W.2d 368, 375 (Iowa 2019). However, we cannot find the district court ever ruled on the motion. On appeal, our court does not consider issues not ruled upon by the trial court and not preserved for our review. *State v. Bynum*, 937 N.W.2d 319, 324 (Iowa 2020) ("Issues not raised before the district court, including constitutional issues, cannot

---

[9] See footnote 3.

be raised for the first time on appeal." (quoting *State v. McCright*, 569 N.W.2d 605, 607 (Iowa 1997))).

At best, it could be said that the court denied the amendment by implication when it ruled on the motion for new trial and did not address any issues in the proposed amendment. However, since we have set aside the ruling and remand for compliance with Rule 2.24(2)(a), the court will be holding a full hearing on the motion for new trial. The district court should first rule on the motion to amend. If granted, the court may then address the merits of the issues raised by the amendment. Thus, we do not find the court acted illegally and annul the writ on this issue.

### C. Waiver of Counsel

Under our certiorari review, we find it appropriate to address whether the court acted illegally in only appointing Shelton standby counsel. Shelton contends the district court failed to secure from him a valid waiver of counsel. Shortly after he began this action, Shelton declined the assistance of counsel and proceeded with standby counsel. In *State v. LePon*, under similar circumstances, we assumed without deciding that the new-trial movant had a constitutional right to counsel. No. 18-0777, 2019 WL 2369887, at *10 (Iowa Ct. App. June 5, 2019). Shelton bases his claim on the statutory provisions of Iowa Code chapter 815 (2016) and Iowa Rules of Criminal Procedure 2.24 and 2.28. Rule 2.28 provides

> [e]very defendant, who is an indigent person as defined in Iowa Code section 815.9, is entitled to have counsel appointed to represent the defendant at every stage of the proceedings from the defendant's initial appearance before the magistrate or the court through appeal, including probation revocation hearings, unless the defendant waives such appointment.

The State responds that the current proceedings are not within the band of "every stage of the proceedings" between initial appearance through appeal because they are on a motion for new trial brought more than two years after final judgment. Our supreme court has recognized a right to counsel in post-appeal hearings such as challenging a restitution order or proceedings to correct an illegal sentence. *See State v. Alspach*, 554 N.W.2d 882, 884 (Iowa 1996); *State v. Dudley*, 766 N.W.2d 606, 618 (Iowa 2009). Here, as in *LePon*, we have an attack on a judgment and conviction brought after the final appeal decision and based on newly discovered evidence. 2019 WL 2369887, at *10. So, we will continue to assume but not decide that there is a right to counsel in these circumstances.

We next ask whether Shelton knowingly, intelligently, and voluntarily waived his right to counsel and conclude he did. When "relinquish[ing] . . . many of the traditional benefits associated with the right to counsel," the accused must do so "knowingly and intelligently." *Faretta v. California*, 422 U.S. 806, 807 (1975). And the request made by the defendant must be clear and unequivocal. *Id*. The State bears the burden of showing a valid waiver. *State v. Rater*, 568 N.W.2d 655, 660 (Iowa 1997). It must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010). And intelligent in the sense that the defendant "knows what he is doing and his choice is made with eyes open." *Tovar v. Iowa*, 541 U.S. 77, 88 (2004).

Shelton does not describe how his waiver was either involuntary or unintelligent, he only complains the court did not engage in an extended colloquy with him. He notes the supreme court has "endorsed" the use of an eleven-

question colloquy. *See State v. Jones*, No. 19-0494, 2020 WL 3264377, at *4 (Iowa Ct. App. June 17, 2020). But "the extent of a trial court's inquiry may vary depending on the nature of the offense and the background of the accused." *State v. Cooley*, 608 N.W.2d 9, 15 (Iowa 2000). And we require less rigorous warnings in the plea stage of criminal proceedings than in the trial stage. *See State v. Majerus*, 722 N.W.2d 179, 182 (Iowa 2006). So it makes sense that even less rigorous warning is required in the post-judgment, -appeal, -postconviction-relief, and -habeas context. By this time, Shelton was already well aware of the hazards noted in any plea colloquy: "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Cooley*, 608 N.W.2d at 15. He was already aware because the criminal proceeding concluded decades before and he is currently serving life in prison.

In addition, Shelton has represented himself in these matters before. Still, he filed a motion stating he was "acting on his own behalf," and citing *Faretta*. The court appointed counsel anyway, and Shelton responded with another motion to "represent[] himself consistent with the principles" of *Faretta*. The court then entered an order warning Shelton against self-representation but indicated if he chose to proceed, he "must acknowledge that his waiver of counsel is both knowing and voluntary" by signing the attached "waiver of attorney." Shelton refused to sign, but the form contained the typical waiver-of-counsel warnings that would have occurred in an on-the-record waiver colloquy. Shelton declined to sign but continued to insist on representing himself. At the next hearing, though, he

agreed to standby counsel and proceeded from there. The court did not engage in any extensive on-the-record colloquy with Shelton. But Shelton would have been aware of the hazards of self-representation through the court's prior warning, his prior criminal trial, PCR, and habeas proceedings and appeals. He received and refused to sign the waiver form containing the relevant warnings. He filed multiple motions insisting that he did not want full counsel appointed but wanted to represent himself citing *Faretta*. He accepted standby counsel throughout these proceedings. We think the duty upon the court was lessened under these circumstances and Shelton was acting on his own free and deliberate choice and made that decision with eyes open. Shelton did not waive counsel involuntarily or unknowingly.

Our determination here that the court did not act illegally regarding appointment of counsel is limited to the time period up to Shelton's appeal, which we are now addressing as a certiorari action. On this issue, we annul the writ. We note that Shelton again filed a request for appointment of counsel on October 11 and 25, 2018, which the court denied by one of its orders on February 4, 2019. Shelton filed a motion to enlarge, which the court ruled on March 1, 2019, and explained the reason for not granting Shelton appointed counsel.[10] Since we are

---

[10] The order states:

> The defendant's motion to amend and enlarge the court order denying appointment of trial counsel is denied. The defendant has steadfastly declined the appointment of counsel, and he has instead only consented to assistance from standby counsel. Defendant was represented by standby counsel at the hearing held on July 6, 2018. It was after that hearing that the court was contemplating whether or not the defendant's evidence and arguments in favor of a new trial could possibly be sustained. After the court performed additional research based on the record and transcripts from the defendant's

remanding for further proceedings on the motion for new trial, the issue of court-appointment of counsel is no longer moot, and the court should address the motion.

We do not find it appropriate under our certiorari review to address any of the other issues Shelton raises.

We sustain the writ as to the notice and hearing on Shelton's motion for new trial, and annul the writ on the motion to amend the motion for new trial and appointment of counsel issues.[11]

**WRIT SUSTAINED IN PART; ANNULLED IN PART; AND REMANDED.**

---

        trial and retrial it became apparent that the defendant's motion would not succeed despite his additional theories and contentions. Consequently, the defendant's request for yet another attorney to assist him was moot.

[11] Shelton raises additional claims in his pro se supplemental proof and reply briefs filed July and December 2020. We are precluded from considering these arguments because Shelton is represented. *See State v. Thompson*, 954 N.W.2d 402, 415 (Iowa 2021); *see also* Iowa Code § 814.6A (effective July 1, 2019).